# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES LANG** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ELIZABETH LANG HOUSER,** | : | |
| **MONTGOMERY COUNTY OFFICE OF** | : | |
| **REGISTER OF WILLS AND CLERK OF** | : | |
| **ORPHANS' COURT, RONALD HOLT,** | : | |
| **FRANCES PIERCE, D. BRUCE HANES,** | : | |
| **ESQ., MICHAEL P. CREEDON, ESQ.,** | : | |
| **and PAUL G. LANG, JR.** | : | **No. 11-4638** |

**Norma L. Shapiro, J.**                                                    **March 28, 2012**

## MEMORANDUM

Plaintiff James Lang brings this action under 42 U.S.C. §§ 1983 and 1985(2) against his siblings Elizabeth Lang Houser and Paul Lang, Jr.,[1] three individuals who served as Register of Wills, the Montgomery County Office of Register of Wills and Clerk of Orphans' Court, and his former attorney, Michael P. Creedon, Esq. The action concerns the Estate of Paul G. Lang, Sr. and Kathryn Lang ("Lang parents"). Defendant Ronald Holt ("Holt") was the Montgomery County Register of Wills ("Register") from 2000–03; defendant Frances Pierce ("Pierce") was Register from 2004–07, and defendant D. Bruce Hanes, Esq. ("Hanes") was Register from 2008–11. Defendant Michael P. Creedon, Esq. ("Creedon") represented James Lang from the late 1990s to 2009.

James Lang alleges defendants conspired to deprive him of property without due process, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution. He seeks judgment against all defendants in an amount exceeding $500,000.00 and "[a]ppropriate

---

[1] The fourth Lang sibling, Robert Lang, is not a party to this action.

injunctive relief." *See* Am. Compl. at 26. Defendants have moved to dismiss the complaint. James Lang has moved to strike the Paul Lang, Jr. motion to dismiss and to disqualify counsel representing Elizabeth Lang Houser. The court will deny the motion to strike (paper no. 37), grant the motions to dismiss (paper nos. 12, 14, 15, 36), and deny the motion to disqualify counsel (paper no. 32) as moot.

**I. Background**

In 1991, the Lang parents wrote a joint will ("1991 will") and named James Lang and Robert Lang as sole heirs. James Lang submitted the 1991 will to the Register, executed an oath, and verified the will signature.[2]

On March 1, 1994, the Lang parents executed a deed leaving their house at 623 Griscom Lane, Radnor, Pennsylvania, to James Lang and Robert Lang.

In 1995,[3] Paul Lang, Jr. petitioned the Montgomery County Orphans' Court to have the Lang parents declared incapacitated persons. On June 20, 1995, at the suggestion of Elizabeth Lang Houser, James Lang met with John P. Crampton, Esq. ("Crampton"), of Dilworth Paxson LLP, for legal representation; the meeting lasted four hours; Crampton charged James Lang $1,500. *Id.* ¶ 22, 25. On August 17, 1995, the Orphans' Court held the Lang parents were incapacitated persons and appointed James Lang and Robert Lang as guardians.

Paul G. Lang, Sr. died in October 1996, and Kathryn Lang died in March 2002. After the deaths of Paul G. Lang, Sr. and Kathryn Lang, James Lang gave the deed to his attorney,

---

[2] It is unclear from the complaint when James Lang submitted the 1991 will to the Register.

[3] The parties have not provided a specific date in 1995.

2

Creedon, with instructions to record it, but Creedon did not do so.[4] Am. Compl. ¶ 80. It is unclear from the complaint whether James Lang has attempted to enforce the unrecorded deed in probate court.

In October 2002, Creedon wrote a letter to Register Holt and requested that James Lang be appointed administrator of the Lang Estate. Holt appointed Sonya G. Moody Distance, Esq., and Peter Klenk, Esq., as administrators. On appeal, the Orphans' Court vacated the appointments of Distance and Klenk, and directed Holt to appoint James Lang as administrator upon his applying and qualifying for same. Holt did not appoint James Lang as administrator; it is unclear from the complaint whether James Lang had applied and qualified for the appointment.

On August 30, 2002, James Lang petitioned the Orphans' Court to probate the 1991 will. On April 22, 2005, Crampton sent a letter to Register Pierce and requested she appoint Elizabeth Lang Houser as administrator of the Lang Estate. Creedon received a copy of the letter, but James Lang did not. On April 27, 2005, Pierce appointed Elizabeth Lang Houser as administrator.

James Lang appealed the appointment of Elizabeth Lang Houser as administrator by filing a Motion to Strike; the court denied the motion as an "improper pleading" on November 1, 2005. The court scheduled a hearing when Holt was unavailable; James Lang sent a letter requesting the court to: (1) hold the record open for 30 days after the hearing to allow him to subpoena and depose Holt; or (2) continue the hearing until Holt could appear in person. The court denied his request and petition, and later ordered him removed from the Lang house.

James Lang moved this court to enjoin the Orphans' Court removal order. *See* Mot. Prelim. Inj. (paper no. 2). The court denied the motion because enjoining removal would have

---

[4] James Lang alleges this occurred "possibly in 2002." Am. Compl. ¶ 80.

required the court to assume *in rem* jurisdiction over property in custody of the Orphans' Court. *See* Order (paper no. 7) at 1.

Dilworth Paxson LLP represents Elizabeth Lang Houser in this action despite meeting with James Lang to give him legal advice in Lang family matters. *See* Mot. Disqualify (paper no. 32). James Lang alleges Crampton obtained information about him during the meeting and used it against him in subsequent litigation. *See* Am. Compl. ¶ 25. Crampton filed an affidavit averring James Lang did not divulge personal information or mention the 1994 will or the unrecorded deed at the meeting. *See* Crampton Aff. ¶ 5.

**II. Discussion**

**A. Motion to strike**

James Lang filed his complaint on July 22, 2011, and amended his complaint on August 10, 2011. All defendants except Paul Lang, Jr. moved to dismiss the complaint, and the court held oral argument on those motions. Paul Lang, Jr., having yet to respond to the complaint, appeared at oral argument unrepresented.[5] He then retained counsel and moved to dismiss the complaint on February 7, 2012, more than six months after it was filed and seven weeks after oral argument. James Lang moves to strike the motion as untimely, or, in the alternative, for leave to file a second amended complaint.

A defendant must respond within 21 days of being served with a summons and complaint. Fed. R. Civ. P. 12(a). On motion or on its own, a court may strike an insufficient defense. Fed. R. Civ. P. 12(f). In deciding a motion to strike, a court has "considerable discretion." *River Rd. Dev. Corp. v. Carlson Corp. Ne.*, No. 89-7037, 1990 U.S. Dist. LEXIS

---

[5] James Lang did not move for default judgment against Paul Lang, Jr.

6201, at *7, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990). Motions to strike are disfavored and usually denied unless the allegations confuse the issues or do not relate to the controversy. *See id*.

In his motion to dismiss, Paul Lang, Jr. makes arguments substantially similar to those made by the other defendants in their motions to dismiss. The Paul Lang, Jr. motion to dismiss relates to the controversy and does not confuse the issues. The motion to strike will be denied.

In the alternative, James Lang moves for leave to amend his complaint with regard to the role of Paul Lang, Jr. in the alleged conspiracy.[6] He argues the actions of Paul Lang, Jr. are "virtually indistinguishable" from those of Elizabeth Lang Houser. *See* Mot. Strike at 3.

A party may amend its complaint by leave of court, and a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may deny leave if amendment would be futile. *See Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981).

Both Paul Lang, Jr. and Elizabeth Lang Houser move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because the allegations against Paul Lang, Jr. and Elizabeth Lang Houser are indistinguishable, *see* Mot. Strike at 3, and because the court will grant the Elizabeth Lang Houser motion to dismiss, amending the complaint would be futile. The court will deny leave for James Lang to file a second amended complaint. *See Heyl*, 663 F.2d at 425.

---

[6] James Lang moves to add this sentence only: "Paul G. Lang, Jr. overtly joined in the illegal actions of his sister and other conspirators when he agreed, as of June 26, 2003, in writing, to allow Attorney Crampton to represent his interests in seeking to obtain estate assets to which he was not, in reality and by proper application of law, entitled." *See* Mot. Strike at 3–4.

**B. Motions to dismiss**

Each defendant moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**1. Rule 12(b)(1): lack of subject matter jurisdiction**

A complaint must be dismissed if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). The plaintiff bears the burden of establishing subject matter jurisdiction. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may be "facial" or "factual." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). A facial challenge concerns a deficiency with the pleading, and a factual challenge concerns the power of the court to hear the action. While a court reviewing a facial challenge may consider only the complaint and its attachments, a court reviewing a factual challenge may consider external evidence. *Gould*, 220 F.3d at 176. Defendants argue the court lacks jurisdiction because: (1) the probate exception bars jurisdiction; (2) abstention is proper under *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971); and (3) the action is barred by the *Rooker-Feldman* doctrine. Because these arguments concern the power of the court to hear the action, defendants have factually challenged the jurisdiction of the court. The court may consider external evidence in determining jurisdiction.

**a. Probate exception**

The probate exception to federal jurisdiction precludes federal courts from adjudicating probate matters. *Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 226 (3d Cir. 2008). It

6

applies if a federal court endeavors to: (1) probate or annul a will; (2) administer a decedent's estate; or (3) assume *in rem* jurisdiction over property in custody of the probate court. *Id.* at 227.

James Lang seeks injunctive relief and damages. We cannot grant injunctive relief requiring us to assume *in rem* jurisdiction over property in custody of the Orphans' Court. *See id.*; *see also* Order (paper no. 7) at 1. The James Lang action for damages does not require the court to probate or annul the 1991 will, administer the Lang Estate, or assume *in rem* jurisdiction over the Lang house. The probate exception does not apply to his action for damages. *See Three Keys*, 540 F.3d at 227.

### b. *Younger* abstention

A federal court has a "virtually unflagging" obligation to adjudicate claims within its jurisdiction. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989). The court may abstain from adjudicating claims within its jurisdiction under certain circumstances, but abstention is an "extraordinary and narrow exception," and "rarely should be invoked." *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992).

In *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), the appellee had petitioned a federal district court to enjoin the appellant, the District Attorney of Los Angeles County, from prosecuting him in state court. The Supreme Court, reversing the district court, held that federal courts may not enjoin pending state-court proceedings absent extraordinary circumstances. *Id.* at 45. The Court stressed the need for comity between federal and state courts, *id.* at 44, and has since expanded *Younger* to noncriminal judicial proceedings involving

important state interests, *see Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982).

*Younger* abstention applies where a federal plaintiff seeks to enjoin state proceedings. *See Marks v. Stinson*, 19 F.3d 873, 882 (3d Cir. 1994). Absent extraordinary circumstances, a federal court must decline to enjoin a state proceeding where, "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989). Although *Younger* abstention is based on comity, the mere pendency of an action in state court does not bar proceedings concerning the same matter in a federal court having jurisdiction. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). "[W]here federal proceedings parallel but do not interfere with the state proceedings, the principles of comity underlying *Younger* abstention are not implicated." *Gwynedd Props.*, 970 F.2d at 1201.

It is unclear whether James Lang seeks to enjoin state proceedings; he seeks damages and "[a]ppropriate injunctive relief to the extent that the Court believes it is just and proper." *See* Am. Compl. at 26. We decline to enjoin state proceedings. *See Younger*, 401 U.S. at 45. His action for damages parallels the state proceedings but does not interfere with them. We need not abstain from adjudicating his action for damages. *See Gwynedd Props.*, 970 F.2d at 1201.

### c. *Rooker-Feldman* doctrine

Under the *Rooker-Feldman* doctrine, federal district courts may not exercise jurisdiction over claims actually litigated in state court or inextricably intertwined with a state adjudication. *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 325–26 (3d Cir. 2000). "A federal

8

action is inextricably intertwined with a state adjudication . . . 'where federal relief can only be predicated upon a conviction that the state court was wrong.'" *Id.* at 325 (citation omitted). The doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). If a federal plaintiff presents an independent claim, even one that denies a legal conclusion reached by a state court in a case in which the plaintiff was a party, the district court has jurisdiction. *Id.* at 293.

James Lang filed a petition in state court to probate the 1991 will before these proceedings commenced. His federal claims were not litigated in state court. Nor are they "inextricably intertwined" with state-court adjudications because, in order to decide these claims, this court would not have to decide the state court was wrong; *i.e.*, defendants could have conspired to deprive James Lang of his alleged property interests without due process regardless of whether the 1991 will was probated. *See Parkview*, 225 F.3d at 325. *Rooker-Feldman* does not deny this court jurisdiction over his federal claims.

**2. Rule 12(b)(6): failure to state a claim upon which relief can be granted**

District courts reviewing motions to dismiss under Rule 12(b)(6) must "conduct a two-part analysis":

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). If plaintiff fails to plead facts allowing the court to "infer more than the mere possibility of misconduct," plaintiff has not shown it is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

### a. Section 1983 claim[7]

James Lang claims defendants conspired to deprive him of property in violation of his due process rights under the Fifth and Fourteenth Amendments.

Section 1983 applies only to persons acting under color of state law. In § 1983 actions for deprivation of property without due process, the court must determine whether: (1) the asserted property interest is protected by the Constitution; and (2) the procedures available to plaintiff constituted due process. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

### i. Property interests

James Lang asserts property interests in his expectancy of one-half of the Lang Estate and alleged one-half ownership of the Lang house.

The Supreme Court has limited protected property interests to those "a person has already acquired in specific benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). In *Roth*, an untenured professor at a state university was hired for a fixed term

---

[7] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

of one academic year and was not rehired. The professor alleged the university violated his
Fourteenth Amendment rights by failing to provide notice of the reason for its decision and an
opportunity for a hearing. The Court held he had no protected interest in continued employment
because the terms of his employment "supported absolutely no possible claim of entitlement to
re-employment," nor was there a statute or university rule creating a legitimate claim of
entitlement. *See id.* at 577–78. The Court offered examples of protected property interests; *e.g.*,
welfare benefits created and defined by statute, state-university employment protected by tenure
provisions, and public employment without tenure or formal contract but with a "clearly implied
promise of continued employment." *Id.* at 577.

There is a lack of controlling authority whether an expectancy in a will is a protected
property interest. The *Roth* court defined protected property interests in terms of entitlement, not
expectation; property interests are created and defined by "rules or understandings that secure
certain benefits and that support claims of *entitlement* to those benefits." *Roth*, 408 U.S. at 577
(emphasis added). Unlike an individual receiving statutory benefits or clearly implied contractual
benefits, an individual named in a will merely expects a benefit and is not entitled to it. *See In re
Estate of Long*, 600 A.2d 619, 621 (Pa. Super. Ct. 1992) (expectancy in a will is not a protected
property interest because "there is no claim of entitlement"). James Lang has not asserted a
protected property interest in his one-half expectancy of the Lang Estate under the 1991 will.

Under Pennsylvania law, unrecorded deeds are void against subsequent *bona fide*
purchasers. To be a *bona fide* purchaser, one must pay valuable consideration, have no notice of
outstanding rights of others, and act in good faith. *Carnegie Natural Gas Co. v. Braddock*, 597
A.2d 285, 288 (Pa. Commw. Ct. 1991). Because defendants Elizabeth Lang Houser and Paul

Lang, Jr. allegedly had notice of the rights of James Lang in the unrecorded deed, *see* Am.

Compl. ¶¶ 14, 17–18, they would not be *bona fide* purchasers protected by the Pennsylvania

recording statutes. *Cf. Poffenberger v. Goldstein*, 776 A.2d 1037, 1043 (Pa. Commw. Ct. 2001)

(plaintiffs asserted unrecorded deed; subsequent purchaser had superior title only because he did

not have notice of unrecorded deed). James Lang has asserted a protected property interest in his

alleged one-half ownership of the Lang house under the unrecorded deed.

### ii. Due process

To state a claim for violation of procedural due process, "a plaintiff must have taken

advantage of the processes that are available to him or her, unless those processes are unavailable

or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). A state actor does not

violate due process if it has made adequate procedures available and plaintiff "has simply refused

to avail himself of them." *Id.* (citation omitted). "If there is a process on the books that appears to

provide due process, the plaintiff cannot skip that process and use the federal courts as a means

to get back what he wants." *Id.*

To state a claim for violation of substantive due process, the plaintiff must show the

deprivation of the protected interest "shocks the conscience." *Chainey v. Street*, 523 F.3d 200,

219 (3d Cir. 2008). "The 'shocks the conscience' standard encompasses 'only the most egregious

official conduct.'" *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400

(3d Cir. 2003) (citation omitted).

The James Lang complaint consists mostly of legal conclusions. *See Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The facts do not allow the court to infer the

Orphans' Court process was unavailable or patently inadequate. Nor do the facts allow the court

12

to infer anything more than the possibility of misconduct by defendants to deprive James Lang of his alleged one-half ownership of the Lang house.

It is unclear from the complaint whether James Lang has attempted to enforce his unrecorded deed in probate court; had he done so, he could have argued that, because his siblings had notice of his unrecorded deed, the house should not have been included in the Lang Estate. If James Lang did not attempt to enforce his unrecorded deed in probate court, he has not been deprived of due process—James Lang cannot "skip" probate court and use federal court to "get back what he wants." *See Alvin*, 227 F.3d at 116. If he *did* attempt to enforce the deed in probate court, and the probate court nonetheless included the house in the Lang Estate, we cannot reject the probate court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). His § 1983 claim must be dismissed.

Because James Lang has failed to allege facts showing defendants violated his rights to procedural and substantive due process, he has no plausible claim for relief under § 1983.[8] *See Fowler*, 578 F.3d at 210–11. The court will dismiss his § 1983 claim.

---

[8] Because James Lang has failed to state a plausible claim for relief under § 1983, we need not determine whether defendants are state actors.

13

**b. Section 1985(2) claim[9]**

Section 1985(2), *inter alia*, protects a citizen from a conspiracy to deny equal protection of the laws. *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976). To state a claim under § 1985(2) for denial of equal protection of the laws, a plaintiff must allege a "class-based, invidiously discriminatory animus." *Id.*

James Lang has not alleged class-based, invidiously discriminatory animus. The § 1985(2) claim will be dismissed.

**C. Motion to disqualify counsel**

The amended complaint will be dismissed so whether Dilworth Paxson LLP should be disqualified is moot. The motion to disqualify counsel will be dismissed but a copy of this memorandum will be sent to the Disciplinary Board of the Supreme Court of Pennsylvania with the pleadings and other relevant record filings. This will allow it to determine whether Crampton and/or Dilworth Paxson LLP violated Rule 1.9 of the Pennsylvania Rules of Professional

---

[9] 42 U.S.C. 1985(2) provides, in relevant part:
> [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

14

Conduct[10] by representing defendant Elizabeth Lang Houser in this action despite meeting with

plaintiff James Lang and charging him for legal advice in Lang family matters.

## III. Conclusion

The court will deny the motion to strike (paper no. 37), grant the motions to dismiss

(paper nos. 12, 14, 15, 36), and deny the motion to disqualify counsel (paper no. 32) as moot. An

appropriate order follows.

---

[10] Rule 1.9 provides:
   A lawyer who has formerly represented a client in a matter shall not
   thereafter represent another person in the same or a substantially related
   matter in which that person's interests are materially adverse to the
   interests of the former client unless the former client gives informed
   consent.